NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UPPER FREEHOLD REGIONAL, BOARD OF EDUCATION, | : : : : | |
| Plaintiff, | : : | Civil Action No. 09-1847 (JAP) |
| v. | : : | **OPINION** |
| T.W. and M.W. o/b/o T.W., | : : | |
| Defendants. | : : | |

PISANO, District Judge.

Presently before the Court are cross-motions for judgment on the record below filed by Plaintiff, the Upper Freehold Regional Board of Education (the "Board" or "District"), and Defendants T.W. and M.W. (the "Parents"), on behalf of T.W., a minor child. For the reasons set forth below, the Court denies the Parents' motion and denies in part and grants in part the Board's motion such that the District is not liable for any compensation or reimbursement.

**I.   Background**

   A.   Factual Background[1]

T.W., born September 24, 2002, is of average or above average intelligence but he has been diagnosed as having mild "pervasive developmental disorder—not otherwise specified," a condition on the autism spectrum. His developmental delays and behavior interfered with his communication and interaction with other people and with his school experience and learning. For the 2005-2006 school year, the District determined that T.W. was preschool disabled and

---

[1]   The decision of the Administrative Law Judge contains a detailed statement of facts, of which this is only a brief summary.

placed him in a preschool program within the District. For the 2006-2007 school year, pursuant to an agreement among the District, the Parents, and other interested parties, T.W. attended an outside program in the mornings and the District's integrated preschool program in the afternoons. A dispute arose between the Parents and the District in the summer of 2007, which resulted in the Parents' unilaterally placing T.W. in an outside program for the following school year.

      B.      Statutory Background

Under the Individuals with Disabilities Act, 20 U.S.C. § 1400 *et seq.* (the "IDEA"), a state receiving federal education funding must provide children with a "free appropriate public education" ("FAPE"). *See* 20 U.S.C. § 1412(a)(1)(A). The FAPE is tailored to the unique needs of children with disabilities by means of an "individualized educational program" ("IEP"). *See* 20 U.S.C. § 1414(d)(1)(A). The IDEA provides several procedural requirements for the development of the IEP. For example, the IEP is to be prepared at a meeting of the "IEP team," which must include a qualified representative of the local educational agency, the child's teacher, a special education teacher, the child's parent or guardian, and, where appropriate, the child. 20 U.S.C. § 1414(d)(1)(B). IEPs must be revised at least every year, 20 U.S.C. § 1414(d)(4)(A), and the local educational agency is required to have in place for each child with a disability an IEP at the beginning of each school year, 20 U.S.C. § 1414(d)(2)(A).

      C.      Procedural History

On April 7, 2008, the Parents filed the relevant petition for due process, claiming that the District had denied T.W. a FAPE for the 2005-2006, 2006-2007, and 2007-2008 school years. An administrative law judge ("ALJ") conducted a hearing and rendered a decision on March 9, 2009. On April 17, 2009, the Board, which is the governing body of the Upper Freehold

Regional School District, filed the instant action challenging some of the ALJ's conclusions. Pursuant to an order of the Court, the parties filed cross motions for a judgment on the record below on May 14, 2010. The Court held oral argument on December 2, 2010, but reserved judgment to allow settlement discussions to continue. After the parties came before the Court for an unsuccessful settlement conference on January 5, 2011, the Court again held oral argument on March 29, 2011.

In their motion before the Court, the Parents challenge the conclusion of the ALJ that T.W. received a FAPE in the school years of 2005-2006 and 2006-2007. They also challenge the ALJ's conclusion that denied reimbursement of T.W.'s transportation costs during the 2007-2008 school year. The Board challenges the ALJ's conclusion that the Parents may be reimbursed tuition for their unilateral placement of T.W. during the 2007-2008 school year. The Court will address the issues chronologically.

## II.     Discussion

**2005-2006 School Year**

<u>Prior to April 7, 2006</u>

The Parents filed the relevant petition for due process on April 7, 2008, claiming that the District had denied T.W. a FAPE for the 2005-2006, 2006-2007, and 2007-2008 school years. "A request for a due process hearing shall be filed within two years of the date the party knew or should have known about the alleged action that forms the basis for the due process petition." N.J.A.C. 6A:14-2.7(a)(1); *see also* 20 U.S.C. § 1415(b)(6)(B). Therefore, the Administrative Law Judge ("ALJ") correctly held that the Parents' claims related to T.W.'s education prior to April 7, 2006 are untimely and may not be granted. (ALJ Decision ("Decision") at 51.) The Parents have abandoned claims prior to April 7, 2006. (Def. Br. 7 n.1, Docket Entry no. 29.)

3

From April 7, 2006

In his "Findings of Fact," the ALJ found that "[the District's] educators determined that T.W. was a preschool disabled child, and during the 2005-06 school year T.W. was placed in the school district's preschool program with typically developing classmates and staff, including a regular teacher and a special education teacher." (Decision at 44.) Based on these findings of fact, and finding that the District's witnesses were credible, the ALJ concluded that the District provided a FAPE during the 2005-2006 school year. (Decision at 51.)

"Factual findings from the administrative proceedings are to be considered *prima facie* correct." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (quoting *P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir.2009)). When, as here, an ALJ has heard live testimony and determined that one witness is more credible than another witness, his determination is due special weight. *Id.* (citing *Shore Reg'l High Sch. Bd. of Educ.*, 381 F.3d 194, 199 (3d Cir. 2004)). The Court finds no evidence that would rebut the special weight given to the ALJ's determinations, and adopts his findings with respect to the 2005-2006 school year.

**2006-2007 School Year**

The Parents and the District collaborated on an IEP for T.W. throughout the spring and summer of 2006. (Decision at 9.) They agreed to an IEP for the 2006-2007 school year that provided for outside placement in the mornings and placement within the District, with related services, in the afternoons. (Decision at 45.) At the administrative hearing before the ALJ, witnesses for the District testified that T.W. made meaningful progress during the year. After eleven days of testimony, the ALJ found that the District's witnesses were credible, and concluded that the District provided a FAPE during the 2006-2007 school year. (ALJ Decision at 51.) As with the 2005-2006 school year, the Court finds no evidence that would rebut the

4

special weight given to the ALJ's determinations, and adopts his findings with respect to the 2006-2007 school year.

**2007-2008 School Year**

The Supreme Court has established that the IDA empowers a court "to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." *School Comm. of Burlington v. Dep't of Ed. of Mass.*, 471 U.S. 259, 369 (1985).[2] Nonetheless, "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Id.* at 373-74. A court may award a disabled student the cost of his private placement only if (1) the court determines that the school district's proposed IEP was inappropriate under the IDEA, and (2) the student demonstrates that the private placement is proper. *Florence Cnty. School District Four v. Carter*, 510 U.S. 7, 12-13 (1993).

After unilaterally removing T.W. to a program outside the District, the Parents developed a plan with that program on November 19, 2007 without the District's participation. The ALJ determined that the plan was an IEP that provided T.W. with a FAPE, and he directed the District to reimburse the Parents' tuition from November 19, 2007 to the end of the 2007-2008 school year. An IEP, however, must be developed by the IEP team, and the IEP team must include the local educational agency, which in this case is the District. *See* 20 U.S.C. § 1414(d). Because the November plan was developed in the absence of the District, it was legal error for

---

[2] The Court notes that the program in which the Parents placed T.W. for the 2007-2008 school year was not "private," but a public special education program outside the District. Nevertheless, the Board has conceded that the Parents may seek reimbursement for this tuition as if the program were private because such an interpretation of the law is reasonable. (Pl. Br. 34-36.) As such, the Court treats the outside program the same as it would a private program, and uses "outside" and "private" interchangeably.

the ALJ to conclude that it was an IEP.  Therefore, the ALJ could not find that T.W.'s placement at the outside program was proper.

Instead, the Court must look to whether the District's proposed IEP was appropriate under IDEA before considering whether T.W.'s outside placement was proper.  Here, the Court lacks an ability to determine whether the school district's proposed IEP was appropriate.  The facts of the instant case most closely resemble those of *C.H. v. Cape Henlopen School District*, 606 F.3d 59 (3d Cir. 2010), where, as here, the District demonstrated consistent willingness to develop an IEP for the upcoming school year, while the Parents cancelled or postponed further meetings before unilaterally deciding to enroll their child in an outside program.  "Although the IEP was not completed in the first meeting, it was the Parents and not the District who delayed the continuation of that meeting . . . and ultimately terminated the process by filing a due process request."  *Cape Henlopen*, 606 F.3d at 69.

From the ALJ's statement of the record in the present case, it appears that a meeting to develop an IEP for the 2007-2008 school year took place on June 15, 2007.  At that meeting, the District proposed an IEP for the review of the Parents.  The Parents expressed some disagreement with the proposed IEP, but when Ms. Judith Chevalier, the District's director of special services, asked whether they accepted or rejected it, the Parents said that they could neither accept nor reject it due to a lack of detail.  (ALJ Decision at 32.)  The District scheduled a follow-up IEP meeting for June 29, 2007, to discuss an amended IEP with the Parents.  The meeting did not take place, as the Parents either cancelled the meeting, according to the District, or postponed it, according to the Parents.  (ALJ Decision at 34.)  The Parents sent a letter to the District on July 3, 2007, acknowledging that they had received the amended IEP and regarded it as a draft, and ended the letter by writing, "We look forward to your response."  (ALJ Decision

at 35-36.)   By another letter dated July 3, 2007, the Parents informed the District that they would unilaterally remove T.W. from the public summer program and place him in a private summer program.  T.W. began attending the private program immediately thereafter.  On July 12, 2007, the Parents filed their first petition for mediation or for due process.  No later than July 16, 2007, the District mailed a letter, dated July 11, 2007, to the Parents seeking further contact to develop an appropriate IEP for T.W.  The Parents did not respond, and after an unsuccessful resolution session took place in August, the Parents unilaterally placed T.W. in an outside program without an IEP.

These actions deprive the Court of the ability to determine whether the District proposed an appropriate IEP.  Absent such evidence, the Court is limited to determining whether the District's inability to have an IEP in place by the time school began for T.W. constituted a loss of an educational benefit for which the District is responsible.  But the Third Circuit has clearly declined to hold a school district liable for such an omission when the parents' reluctance to develop the IEP has been the primary reason for that omission, *id.*, and the Court does so here as well.  The Court cannot determine that the District's proposed IEP was inappropriate and, accordingly, the District is not liable for reimbursing the tuition for T.W.'s 2007-2008 school year.

Furthermore, even where private placement is appropriate and reimbursement is otherwise due, the IDEA permits the equitable reduction or elimination of tuition reimbursement under certain circumstances.  *Cape Henlopen*, 606 F.3d at 67.  The statute provides, in relevant part:

> The cost of reimbursement described in clause (ii) may be reduced or denied—
>    (I) if—

>>(aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
>
>>(bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa);
>
> . . . or
>
>>(III) upon a judicial finding of unreasonableness with respect to actions taken by the parents.

20 U.S.C. § 1412(a)(10)(C)(iii).[3]

This Court also denies reimbursement on equitable grounds, as provided for in 20 U.S.C. 1412(a)(10)(C)(iii). The ALJ found that the Parents did not inform the IEP team at the last meeting they attended that they rejected the placement proposed by the agency nor did they state their intent to enroll their child in school outside the District at public expense at that meeting. Thus, they did not provide adequate notice to the District of their unilateral withdrawal of T.W. from the public placement. Alternatively, the Court finds that the Parents' conduct in delaying, cancelling, or refusing to set up additional meetings with the IEP team substantially precluded any possibility that the District could timely develop an appropriate IEP for T.W. and provide the necessary services to him, or that the parties could resolve this dispute without resort to litigation. The Third Circuit has found that parents' disregard of their obligations to cooperate and assist in the formulation of an IEP is "among the unreasonable action[ ] taken by the parents that Congress contemplated when it gave courts the authority to equitably reduce or eliminate

---

[3] The relevant New Jersey provision, N.J.A.C. 6A:14-2.10(c), provides substantially the same language.

tuition reimbursement." *Cape Henlopen*, 606 F.3d. at 72 (citing *Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484, 2496 (2009)). "The IDEA was not intended to fund private school tuition for the children of parents who have not first given the public school a good faith opportunity to meet its obligations." *Id.* (citing *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 995 (1st Cir. 1990)). Accordingly, the Court denies the Parents' request for tuition reimbursement on equitable grounds.

### III.     Conclusion

Because the ALJ's determinations are due special weight in this case, the Court adopts his conclusions with respect to the 2005-2006 and 2006 school years. For the 2007-2008 school year, however, the Court finds that the District is not liable for failing to develop an appropriate IEP and will deny reimbursement on equitable grounds. An appropriate order shall issue.


/s/ JOEL A. PISANO
United States District Judge

Dated: March 31, 2011

9